IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIENNE HUDSON, individually and on behalf of all those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FIRST TRANSIT, INC.,<br><br>Defendant. | No. C 10-03158 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES** |

**INTRODUCTION**

In this putative employment discrimination class action, plaintiff moves to strike defendant's affirmative defenses. The motion is **GRANTED IN PART** and **DENIED IN PART**.

**STATEMENT**

Plaintiff Adrienne Hudson is an African-American woman who resides in Oakland. In 2000, plaintiff was charged with felony welfare fraud under California state law. Plaintiff pled no contest and was sentenced to four days of jail time and five years of probation. After plaintiff completed her sentence, the state court reduced her conviction to a misdemeanor and dismissed the charge.

Defendant First Transit is a national transportation company. In February 2009, plaintiff applied for a paratransit bus driver position with defendant. Defendant offered plaintiff the position, on the condition that she pass a criminal background check. Plaintiff accepted the offer. In March 2009, defendant rescinded its offer, allegedly because of plaintiff's conviction for

welfare fraud.  Plaintiff alleges that "First Transit's criminal records policy prohibits, among other things, individuals convicted of a felony and individuals sentenced to any period of incarceration (no matter how brief) from ever working for the company" (Compl. ¶ 20).

On July 20, 2010, plaintiff filed this putative class action, seeking money damages and equitable relief.  Plaintiff alleges that "First Transit's policy or practice of not hiring applicants and terminating employees based on their criminal records has a disparate impact on African Americans and Latinos," which violates (1) Title VII of the Civil Rights Act, 42 U.S.C. 2000d-2(k); (2) California Fair Employment and Housing Act, California Government Code Section 12940(a); and (3) California Unfair Business Practices Act, Business and Professions Code Section 17200.  Plaintiff now moves to strike defendant's affirmative defenses numbered 1, 4, 6, 10, 11, and 12.

## ANALYSIS

A motion to strike an affirmative defense is allowable under Federal Rule of Civil Procedure 12(f), under which a court may strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  An affirmative defense is insufficiently pled if it does not give the plaintiff fair notice of the nature of the defense.  *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979).  *Twombly*'s heightened pleading standard applies to affirmative defenses:

> While neither the Ninth Circuit nor any other Circuit Courts of Appeals has ruled on this issue, the vast majority of courts presented with the issue have extended *Twombly*'s heightened pleading standard to affirmative defenses.

*Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1171 (N.D. Cal. 2010) (Patel, J.).  *Twombly* requires that a plaintiff allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  If an affirmative defense is stricken, leave to amend should be freely given when doing so would not cause prejudice to the opposing party.  *Wyshak*, 607 F.2d at 826.

Rule12(f) is a vehicle by which to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  "While a Rule 12(f) motion

provides the means to excise improper materials from pleadings, such motions are generally disfavored because the motions may be used as delaying tactics and because of the strong policy favoring resolution on the merits." *Barnes*, 718 F. Supp. 2d at 1170.

### A.   AFFIRMATIVE DEFENSE NO. 1.

Defendant's first affirmative defense asserted that plaintiff's claims under Title VII of the Civil Rights Act and the California Fair Employment and Housing Act are barred by the applicable statutes of limitations. Plaintiff argues that this affirmative defense is insufficient and immaterial. In its opposition brief, defendant withdrew this affirmative defense (Opp. 2). Therefore, this defense is deemed withdrawn.

### B.   AFFIRMATIVE DEFENSE NO. 4.

Defendant's fourth affirmative defense states, "Plaintiff's employment and the employment of those members of the Class and Subclass(es) located in California were governed by California Labor Code section 2922 and, therefore, she and they could be terminated with or without notice and/or cause" (Third Amd. Ans. 9). Plaintiff argues that the fourth affirmative defense is "immaterial because Plaintiff's at-will employment status does not constitute a legal defense to First Transit discriminating against Plaintiff and the putative class and subclass through its policy of refusing to hire or employ individuals with criminal records or who appear to have criminal records" (Br. 9).

"At-will employment is not a defense to a termination for discriminatory reasons." *Equal Emp't Opportunity Comm'n v. Cal. Psychiatric Transitions, Inc.*, 725 F. Supp. 2d 1100, 1118 (E.D. Cal. 2010); *see also Freund v. Nycomed Amersham*, 347 F.3d 752, 758 (9th Cir. 2003) (holding that employers may not terminate at-will employees for reasons that violate public policy). Defendant argues that this affirmative defense is not immaterial because "Defendant has given Plaintiff fair notice that, absent any showing by Plaintiff of discriminatory impact, Defendant will rely on the employment-at-will doctrine as a defense" (Opp. 9). If plaintiff fails to prove that defendant's hiring policy is discriminatory, however, plaintiff will lose the case, making this affirmative defense irrelevant. The fourth affirmative defense is immaterial. Accordingly, plaintiff's motion as to this affirmative defense is **GRANTED**. The fourth affirmative

3

1  defense is stricken without prejudice to defendant presenting evidence of plaintiff's at-will
2  employment status at trial.

### C.     AFFIRMATIVE DEFENSE NO. 6.

Defendant's sixth affirmative defense states:

> To the extent the Complaint alleges wrongful termination of Defendant's existing employees or wrongful failure to hire any applicant into a driver, dispatcher and/or mechanic position with Defendant, such acts or omissions by agents or employees of Defendant, including local safety and/or human resource managers including, but not limited to unlawful termination of employees and unlawful failure to hire applicants, any such wrongful acts were unauthorized by Defendant and/or committed outside the course and scope of any such agency or employment.

(Third Amd. Ans. 10.) Plaintiff argues that the sixth affirmative defense is insufficient because it "does not provide facts to support the conclusion that any wrongful acts were unauthorized or committed outside the scope of agency or employment" (Br. 6). In her reply brief, plaintiff also argues that the affirmative defense is insufficient because it lacks legal merit.

Defendant has alleged sufficient facts. Defendant identified the relevant individuals by their job titles. This level of detail is appropriate, considering this case is a nationwide class action and defendant cannot specify each employee, wrongful act, and manager relevant to this defense. Furthermore, to determine whether this defense has legal merit, this order would have to resolve numerous issues of fact and law — inquiries that are not appropriate in the context of a motion to strike. *See Barnes*, 718 F. Supp. 2d at 1170 ("[O]nce an affirmative defense has been properly pled, a motion to strike which alleges the legal insufficiency of an affirmative defense will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense.") (internal quotation marks omitted). Plaintiff's motion to strike the sixth affirmative defense is therefore **DENIED**.

### D.     AFFIRMATIVE DEFENSE NO. 10.

Defendant's tenth affirmative defense states, "[t]he Complaint fails to properly state a claim upon which prejudgment interest may be awarded, as the front pay claimed is too speculative to allow an award of prejudgment interest" (Third Amd. Ans. 11). Plaintiff argues that it is (1) "insufficient because it simply recites the language of Rule 12(b)(6) and fails to identify specific deficiencies in Plaintiff's complaint," (2) insufficient because it "fails to state

4

why and which damages being sought are not sufficiently certain," and (3) redundant because "it cannot be properly categorized as affirmative defenses [sic]," as it merely asserts a defect in Hudson's prima facie case (Br. 6–7).

None of these arguments have merit. *First*, the tenth affirmative defense does not simply recite the language of Rule 12(b)(6). Although the wording of the affirmative defense mirrors the wording of Rule 12(b)(6) ("failure to state a claim upon which relief can be granted"), it does not merely recite this language. Rather, this affirmative defense specifies that prejudgment interest on front pay should not be awarded, because it is too speculative. *Second*, the affirmative defense specifies which damages being sought are not sufficiently certain (prejudgment interest on front pay), and why it is not sufficiently certain (it is too speculative). *Third*, the affirmative defense does not merely assert a defect in Hudson's prima facie case. Rather, it specifies why certain damages should not be awarded to plaintiff, even if all elements of the prima facie case are proven. Plaintiff's motion to strike the tenth affirmative defense is accordingly **DENIED**.

### E.    AFFIRMATIVE DEFENSE NO. 11.

Defendant's eleventh affirmative defense states:

> Plaintiff's claims on behalf of herself, and the Class and/or Subclass(es) she purports to represent, are barred in whole or in part, or fail as a matter of law, to the extent Defendant may be bound by the terms of various collective bargaining agreements between Defendant and unions representing unionized employees nationwide, including without limitation, Defendant's contractual right to terminate the employment of probationary employees without cause.

(Third Amd. Ans. 11–12.) Plaintiff argues that the fourth affirmative defense is "immaterial because being bound to collective bargaining agreements does not by itself constitute a legal defense to the claims of disparate impact discrimination brought by Plaintiff and the putative class and subclass" (Br. 9).

As explained above, "[a]t-will employment is not a defense to a termination for discriminatory reasons." *See Equal Emp't Opportunity Comm'n*, 725 F. Supp. 2d at 1118. Defendant argues that this affirmative defense is not immaterial because "[a]bsent a showing by Plaintiff of discriminatory impact, Defendant will rely on the provisions of relevant collective bargaining agreements" (Opp. 9). If plaintiff fails to prove that defendant's hiring policy is discriminatory, however, plaintiff will lose the case, making this affirmative defense irrelevant.

5

The eleventh affirmative defense is immaterial. Accordingly, plaintiff's motion as to this affirmative defense is **GRANTED**. The eleventh affirmative defense is stricken without prejudice to defendant presenting evidence of plaintiff's at-will employment status at trial.

### F. AFFIRMATIVE DEFENSE NO. 12.

Defendant's twelfth affirmative defense states,

> Plaintiff's claims on behalf of the Subclass(es) she purports to represent are barred in whole or in part, or fail as a matter of law, to the extent that the putative Subclass members in California were not employees of Defendant prior to 2007, when Defendant merged with Laidlaw International, Inc.

(Third Amd. Ans. 12.) Plaintiff argues that this affirmative defense is "insufficient because, without additional facts or an applicable legal theory to connect pre/post merger employees to Plaintiff or the putative class or subclass, it fails to put Plaintiff on fair notice of the nature of this defense" (Br. 7). Plaintiff also argues that this affirmative defense is "immaterial to the extent that First Transit is arguing that is not liable for any unlawful failures to hire or terminations by Laidlaw prior to the companies' merger. Since Laidlaw is not a party to this lawsuit and First Transit was not the employer at that time, there can be no claim for liability against First Transit arising from the current Complaint" (Br. 9).

These arguments do not have merit. This affirmative defense is sufficient. Plaintiff's complaint defines the putative California subclass as "[a]ll African-American and Latino individuals whom First Transit refused to hire or terminated in California because of their actual or presumed criminal record, beginning four years preceding the filing of this Complaint and continuing until the date of judgment" (Compl. ¶ 24). As defendant merged with Laidlaw in 2007, the subclass period defined in the complaint includes individuals who were legacy Laidlaw employees and applicants. Defendant has alleged sufficient facts to put plaintiff on notice of its defense. Furthermore, defendant can reasonably expect to be required by plaintiff to demonstrate that certain class members were employed by Laidlaw during the putative class period in order to escape liability. Plaintiff's motion to strike the twelfth affirmative defense is therefore **DENIED**.

### CONCLUSION

For the foregoing reasons, the motion to strike is **GRANTED IN PART** and **DENIED IN PART**. Specifically, affirmative defenses numbered 1, 4, and 11 are **STRICKEN**. Within **FIVE CALENDAR**

6

**DAYS** of this order, defendant shall file a fourth amended answer, which shall be exactly the same as its third amended answer except that it shall exclude the affirmative defenses stricken by this order and renumber the remaining affirmative defenses.  The hearing scheduled for February 10, 2011, is **VACATED**.

**IT IS SO ORDERED.**

Dated:  February 3, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE