1   MAUREEN E. MCCLAIN, Bar No. 062050
    Email: mmcclain@littler.com
2   CONSTANCE E. NORTON, Bar No. 146365
    Email: cnorton@littler.com
3   JOHN S. HONG, Bar No. 255150
    Email: jhong@littler.com
4   LITTLER MENDELSON
    A Professional Corporation
5   650 California Street
    20th Floor
6   San Francisco, CA  94108.2693
    Telephone:    415.433.1940
7   Facsimile:     415.399.8490

8   Attorneys for Defendant
    FIRST TRANSIT, INC.

9

10                  UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12   ADRIENNE HUDSON, individually and        Case No.  10-cv-03158 WHA
     on behalf of all others similarly situated,
13                                             **OPPOSITION TO PLAINTIFF'S MOTION
                      Plaintiff,               FOR CLASS CERTIFICATION**
14
            v.                                 Date:   August 11, 2011
15                                             Time:   8:00 a.m.
     FIRST TRANSIT, INC.,                      Judge:  Honorable William H. Alsup
16                                             Dept:   Ctrm. 9, 19th Floor
                      Defendant.
17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION                                            Case No. 10-CV-03158 WHA

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION ................................................................................................1

II.  STATEMENT OF FACTS ...................................................................................3

     A.   First Transit Has A Well Articulated Policy Of Non-Discrimination ........................3

     B.   At Least Four Separate Criminal Records Standards Have Been Used By HireRight To Adjudicate First Transit Conditional Drivers' Backgrounds Since January 2009 ....................................................................4

          1.   HireRight Used Two Separate Criminal Matrices To Adjudicate Criminal Background Checks Prior To March 10, 2010................................5

          2.   The CBCU Was Established Beginning March 10, 2010 ..............................5

          3.   As Of March 17, 2010, Criminal Background Check Results To Which The CBCU Had Access Through HireRight Were Significantly Restricted ........................................................................6

          4.   The New Criminal Records Adjudication Matrix Went Into Effect November 10, 2010 ......................................................................7

          5.   On April 4, 2011, FGA Implemented Phased Checking Company-Wide ...............................................................................................7

     C.   In January 2011, FGA Implemented And Trained Field Personnel On The New Driver Selection Process Guidelines ........................................8

     D.   Restrictive Governmental Client Contract Requirements Trump First Transit's Criminal Background Checking Procedures ........................9

          1.   A Single First Transit Location Is Responsible For 44% Of The Criminal Fails Observed By Plaintiff's Expert ..........................................10

          2.   Scores of Client Contracts Contain More Restrictive Criminal Background Standards Than First Transit's ............................................11

III. LEGAL ANALYSIS ...........................................................................................12

     A.   Plaintiff Lacks Standing To Represent A Class Seeking Injunctive Relief Under Rule 23(b)(2) And Is Not An Adequate Representative Under Rule 23(a) ......................................................................................12

          1.   Plaintiff Has No Credible Threat of Personal Future Injury ......................12

          2.   Plaintiff's Declaratory Relief Claim Similarly Is Not Ripe ......................14

     B.   The Putative Class Members For Whom Plaintiff Seeks Injunctive Relief Are Not Ascertainable ....................................................................15

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION)

i.

Case No. 10-CV-03158 WHA

**TABLE OF CONTENTS**
(CONTINUED)

PAGE

C. Plaintiff Fails To Meet The Minimum Rule 23(a) Typicality, Adequacy Or Commonality Standards ......................................................................................16

  1. Plaintiff's Claims Are Not Typical of The Class Claims And As Such She Is Not An Adequate Class Representative .............................................16

  2. Plaintiff Cannot Show A Common Policy Or Practice Which Has, Or Will Have, A Disparate Impact On African American Conditional Drivers .................................................................................................................18

     a. Plaintiff's Expert Failed To Conduct A Rigorous Analysis As Required Under Rule 23(a) And Thus His Conclusion That There Is Disparate Impact Caused By A "Common Policy" Is Fatally Flawed .................................................................................18

     b. First Transit's Statistical Analysis, By Contrast, Affirmatively Illustrates The Lack of Commonality and Uniformity Necessary for Class Treatment......................................................22

     c. Plaintiff's Unreliable Statistical Evidence Cannot Be Used To Meet Her Burden To Show Commonality Under Rule 23(a) ............23

  3. Plaintiff's Reliance On Professor Western's Irrelevant Report Is Objectionable ...................................................................................................24

IV. CONCLUSION................................................................................................................25

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

ii.

CASE NO. 10-CV-03158 WHA

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abbott Laboratories v. Gardner*,
    387 U.S. 136 (1967) ........................................................................................................... 14

*B.C. v. Plumas Unified School Dist.*,
    192 F.3d 1260 (9th Cir. 1999) ........................................................................................... 13

*Brown v Nucor Corp.*,
    576 F.3d 149 (4th Cir. 2009) ............................................................................................. 24

*Califano v. Yamaskai*,
    442 U.S. 682 (1979) ........................................................................................................... 16

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ............................................................................................................. 13

*Coleman v. The Quaker Oats Company*,
    232 F.3d 1271 (9th Cir. 2000) ........................................................................................... 24

*Dean v. Intl. Truck & Engine Corp.*,
    220 F.R.D. 319 (N.D. Ill. 2004) ........................................................................................ 13

*Deitz v. Comcast Corp.*,
    2007 WL 2015440 (N.D. Cal. Jul. 11, 2007) .................................................................... 15

*Fortyune v. American Multi-Cinema, Inc.*,
    364 F.3d 1075 (9th Cir. 2004) ........................................................................................... 13

*General Telephone Co. of Southwest v. Falcon*,
    457 U.S. 147 (1982) ..................................................................................................... 16, 18

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................................................................... 16

*Hanon v. Dataproducts Corp.*,
    976 F. 2d 497 (9th Cir. 1992) ............................................................................................ 17

*Hodgers-Durgin v. de la Vina*,
    199 F.3d 1037 (9th Cir. 1999) ........................................................................................... 14

*Huynh v. Chase Manhattan Bank*,
    465 F.3d 992 (9th Cir. 2006) ............................................................................................. 14

*Kauffman v. Dreyfus Fund, Inc.*,
    434 F.2d 727 (3rd Cir. 1970) ............................................................................................. 14

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

*La Mar v. H & B Novelty & Loan Co.*,
    489 F.2d 461 (9th Cir. 1973) ................................................................. 14

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................. 13

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) ................................................................. 15

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ............................................................................. 13

*Rizzo v. Goode*,
    423 U.S. 362 (1976) ............................................................................... 9

*Romberio v. Unumprovident Corp.*,
    385 F. App'x 423 (6th Cir. 2009) .......................................................... 15

*Schwartz v. Harp*,
    108 F.R.D. 279 (C.D. Cal. 1985) .......................................................... 18

*Stevens v. Harper*,
    213 F.R.D. 358 (E.D. Cal. 2002) .......................................................... 13

*Texas v. United States*,
    523 U.S. 296, 118 S. Ct. 1257 (1998) ................................................... 14

*U.S. v. County of Fairfax*,
    629 F.2d 932 (4th Cir. 1980) ................................................................. 24

*United States v. City of New York*,
    258 F.R.D. 47 (E.D.N.Y. 2009) ............................................................ 13

*Wal-Mart Stores, Inc. v. Dukes*,
    ___ U.S. ___, 131 S. Ct. 2541 (2011) ............................................ passim

*Wards Cove Packing Co., Inc. v. Atonio*,
    490 U.S. 642 (1989) ............................................................................. 24

*Watson v. Fort Worth Bank & Trust*,
    487 U.S. 977 (1988) ....................................................................... 23, 24

*Xavier & Franklin v. Philip Morris USA Inc.*,
    2011 WL 1464942 (N.D. Cal. Apr. 18, 2011) .................................. 15, 16

**FEDERAL STATUTES**

15 U.S.C. § 1681 *et seq.* ..................................................................... 5

42 U.S.C. § 2000e–2(k) ........................................................ 2, 18, 23, 24

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION                iv.                CASE NO. 10-CV-03158 WHA

**OTHER STATUTES**

California Business & Professions Code § 17200, *et seq.* ............................................................ 1

California Government Code § 12940(a) .......................................................................................... 1

California Penal Code § 1203.4a ................................................................................................... 17

**RULES**

Federal Rules of Civil Procedure, Rule 23(a) ...................................................................... passim

Federal Rules of Civil Procedure, Rule 23(b)(2) .................................................................. passim

Federal Rules of Civil Procedure, Rule 30(b)(6) ......................................................................... 4

Federal Rules of Evidence 401 and 402 ...................................................................................... 25

**CONSTITUTIONAL PROVISIONS**

U.S. CONST. Article III, § 2 .............................................................................................. 12, 13

**OTHER AUTHORITIES**

Nagareda, *Class Certification in the Age of Aggregate Proof*
    84 N.Y.U. L. Rev. 97, 132  (2009) ...................................................................................... 18

Bruce Western, *Criminal Background Checks and Employment Among Workers With Criminal Records* ............................................................................................................... 25

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

v.

CASE NO. 10-CV-03158 WHA

# I.    INTRODUCTION

Carefully disguised in a footnote, buried well into her opening brief, the shambles of Plaintiff's case against First Transit are revealed:  the facts and record evidence preclude her from seeking injunctive relief on behalf of Latino drivers, she has no basis to seek relief on behalf of First Transit mechanics and dispatchers, she cannot seek to certify a subclass on behalf of First Transit employees in California for relief under California Business & Professions Code § 17200, *et seq*. or California Government Code section 12940(a), and finally the United States Supreme Court's June 20th decision in *Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S. Ct. 2541 (2011), undeniably rejected any possibility she could represent a putative class seeking back pay, front pay or restitution under the guise of "equitable relief."  *See* Plaintiff's Motion For Class Certification  ("Motion") [Docket No. 61] at p. 15, n.21.  Plaintiff Adrienne Hudson ("Hudson") now seeks injunctive relief from a criminal background checking procedure not in effect at the time she applied to First Transit, and even if it was, would not have been a bar to her employment, for a group of African American conditional drivers with criminal records yet to be identified.  As such, she lacks standing to bring the claims she now alleges.

Like the Plaintiffs in *Wal-Mart*, Plaintiff strategically chose to limit her putative class claims to injunctive and equitable relief only. *See, e.g.,* Joint Case Management Statement [Docket No. 21] ¶ 10:26-27. That election is critical to the certification request now before the Court, wherein Plaintiff purports to seek *prospective* "injunctive and declaratory relief" on behalf of the following *retrospectively defined* class:

> All African Americans who applied for and *were offered* conditional employment as drivers with First Transit at any time since January 23, 2009, and whose *applications* First Transit *rejected* because the class member failed First Transit's criminal background check policy.

*See* Notice of Motion, [Docket No. 61] at p. 1 (emphasis added).  These conditional drivers were already subjected to First Transit's criminal background checking practices and cannot benefit from the *prospective* injunction now sought by Plaintiff to prevent First Transit from using its *current* criminal background check procedures for conditional drivers who have not yet been rejected for

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION                    1               CASE NO. 10-CV-03158 WHA

1    employment. *See* Motion at p. 2; Complaint [Docket No. 1] at Prayer ¶¶ D and E.[1]   Plaintiff's

2    proposed class definition (and most discovery to date) plainly was focused on seeking back pay as an

3    equitable remedy.   Yet, the putative class as defined, cannot describe a group of individuals whose

4    membership can benefit from the requested injunctive relief.   As such the class cannot be ascertained

5    in a reliable manner.

6             Similarly, Plaintiff cannot meet her burden under Federal Rule of Civil Procedure

7    23(a) to demonstrate that she is a typical and adequate class representative, or that there is a

8    commonality amongst the class that would be remedied by the requested relief.   Plaintiff's class

9    claims are premised on her ability to obtain a declaration that First Transit's employment practices

10   are unlawful under Title VII, 42 U.S.C. § 2000e, *et. seq.*, *see* Complaint, Prayer ¶ C, more

11   specifically the Court must find that First Transit's current facially neutral criminal background

12   checking practices have a disparate impact on African American bus drivers.   Even assuming

13   *arguendo* Plaintiff had standing to challenge practices not in effect when she worked at First Transit,

14   her statistical expert failed to perform a rigorous analysis of available ADP payroll and Central

15   Background Checking Unit ("CBCU") worksheet data and provides no credible evidence to suggest

16   that First Transit's evolving criminal background practices have a nationwide disparate impact on

17   African Americans. A rigorous analysis of the data actually reveals the practices have absolutely no

18   impact on the employment of First Transit's largely African American workforce nationwide.

19             Thus, contrary to Plaintiff's assertion, First Transit has no single nationally applied

20   "criminal background checking policy." In fact, the criminal background checking procedures

21   currently in effect at First Transit have four distinct influences which defy any finding that a

22   common policy applied either to Plaintiff or to any injunctive relief putative class: (1) state and local

---

[1]   Plaintiff asks to the Court to mandate that First Transit: (1) develop and implement a criminal background check policy that is job related, consistent with business necessity and minimizes adverse impact on African Americans; (2) provide training on such new or modified policy to those employees responsible for making adjudication decisions under First Transit's crimination background check policy and procedure, and (3) monitor and submit reports regarding the Court ordered injunctive relief. *See* Motion at p. 2:7-16. Even Plaintiff's requested relief is flawed, as the Court cannot mandate training of the employees of non-party HireRight who, as demonstrated herein, are mainly responsible for adjudicating First Transit conditional drivers' criminal background results, nor can the Court enjoin non-party governmental entities from including stringent criminal background checking standards in their contracts.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION                    2.                    CASE NO. 10-CV-03158 WHA

1   laws that vary across the nation regarding the definition of specific criminal activity; (2) variations in

2   state laws regarding the temporal scope for reporting criminal background check results; (3) First

3   Transit's clients contracts, the vast majority of which are with state and local governments, with

4   more stringent criminal background checking criteria than First Transit's; and (4) as of April 4,

5   2011, adjudication of a conditional driver's criminal record using the current criminal background

6   matrix, simply will never take place if that individual fails the Motor Vehicle records ("MVR")

7   check.   Given the glaring deficiencies in Plaintiff's ability to represent any class, First Transit

8   respectfully requests that Plaintiff's motion for class certification be denied in its entirety.

9   **II.     STATEMENT OF FACTS**

10          **A.     First Transit Has A Well Articulated Policy Of Non-Discrimination**

11                  First Transit is the largest public sector provider of transit services in North America,

12   operating in over 150 locations nationwide, offering on-demand, fixed route, or scheduled

13   paratransit services, customized shuttle services at airports and universities and inmate

14   transportation.   Appendix of Evidence in Opposition to Class Certification ("App.") at Ex. C ¶4.

15   First Transit's paratransit passengers are mentally or physically challenged adults, mobility impaired

16   and the elderly – its precious cargo.  *Id.*  In addition to safety obligations to them, First Transit must

17   protect the safety and security of its employees and property and, like most of its competitors,

18   conducts criminal background checks on all conditional employees, including drivers.  *Id.*

19                  First Transit has only one policy relevant to Plaintiff's disparate impact claim – a

20   policy of non-discrimination:

21              FirstGroup America, Inc. ("FGA") is an Equal Employment Opportunity
                employer.  First Group America, Inc. does not discriminate against a
22              conditional driver or employee on the basis of race, color, sex, religion,
                national origin, age, disability, or any other consideration made unlawful
23              by applicable federal, state or local laws.[2]

24   *See, e.g.,* Declaration of Wendy Whitt in Support of Motion ("Whitt Decl.") Ex. 15 at D0078206

25   ("FirstGroup America, Inc. is an Equal Opportunity Employer that values diversity.")]▬▬▬▬

26   [2]   FGA is the largest provider of surface transportation services in North America, owning and/or
      operating over 70,000 school and transit buses, and over 1,100 locations in the United States and
27   Canada.  FGA is comprised of five business units, including First Transit.  App. Ex. C ¶ 3.▬▬▬▬▬

28   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION                    3.                    CASE NO. 10-CV-03158 WHA

1 ██████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████

3 ██████████████████████████████████████████████████████

4 ████████   Given the monumental discovery in this case to date,[3] it is disingenuous to assert that

5 since January 23, 2009, First Transit has operated under *a nationally applied* criminal background

6 checking policy that disparately impacts African Americans.  Plaintiff's assertion is belied by the

7 extensive record.[4]

8       **B.**    **At Least Four Separate Criminal Records Standards Have Been Used By**

9            **HireRight To Adjudicate First Transit Conditional Drivers' Backgrounds Since January 2009**

10     ██████████████████████████████████████████████

11 ██████████████████████████████████████████████████████

12 ██████████████████████████████████████████████████████

13 ██████████████████████████████████████████████████████

14 ██████████████████████████████████████████████████████

15 ██████████████████████████████████████████████████████

16 ██████████████████████████████████████████████████████

17 ██████████████████████████████████████████████████████

18 ██████████████████████████████████████████████████████

19 [3] ██████████████████████████████████████████████████

20 ████████████████████████████████████ █ ███████████████

21 ██████████████████████████████████████████████████████

22 ███████████████████████████

23 [4] Plaintiff spent weeks deposing First Transit's Rule 30(b)(6) witnesses concerning criminal background checking and driver selection procedures articulated in First Transit's 2008 System

24 Safety & Security Plan ("SSSP") and Human Resource Manuals, and devotes at least four (4) pages of her brief to recounting that history.  Yet, none of it is relevant to the Court's class certification

25 inquiry here, where only current practices can be enjoined. ████████████████████████████

26 supplanting First Transit's previously articulated standards insofar as they apply to any conditional driver class to which prospective injunctive relief could be granted. Attempting to create the

27 appearance of a "common" practice, Plaintiff devotes a substantial portion of her brief to First Transit's auditing procedures, Motion at pp. 10:17-12:7, despite the fact that with one exception,

28 App. Ex. B-24 at 109:11-23; 113:2-8 (an incumbent employee, not even a potential class member) there was no evidence that anyone was ever terminated as a result.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108-2693
415.433.1940

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

4.

CASE NO. 10-CV-03158 WHA

1

2

3

      **1.**      **HireRight Used Two Separate Criminal Matrices To Adjudicate Criminal Background Checks Prior To March 10, 2010**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

      **2.**      **The CBCU Was Established Beginning March 10, 2010**

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

5.

CASE NO. 10-CV-03158 WHA

3.     **As Of March 17, 2010, Criminal Background Check Results To Which
The CBCU Had Access Through HireRight Were Significantly Restricted**

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

CASE NO. 10-CV-03158 WHA

4.      **The New Criminal Records Adjudication Matrix Went Into Effect November 10, 2010**

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

7.

CASE NO. 10-CV-03158 WHA

5.      **On April 4, 2011, FGA Implemented Phased Checking Company-Wide**

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ █████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ ████████████████████████████████

████████████████████████████████████████████████████████

███████████████████ ██████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████

C.      **In January 2011, FGA Implemented And Trained Field Personnel On The New Driver Selection Process Guidelines**

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

[6]
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940



**D.**     **Restrictive Governmental Client Contract Requirements Trump First Transit's Criminal Background Checking Procedures**

7

*See Rizzo v. Goode*, 423 U.S. 362, 378-

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

9.

CASE NO. 10-CV-03158 WHA

1. **A Single First Transit Location Is Responsible For 44% Of The Criminal Fails Observed By Plaintiff's Expert**

79 (1976) ("when a plaintiff seeks to enjoin the activity of a government agency, even within a unitary court system, his case must contend with the well-established rule that the Government has traditionally been granted the widest latitude in the "dispatch of its own internal affairs.").

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

10.

CASE NO. 10-CV-03158 WHA



2.      **Scores of Client Contracts Contain More Restrictive Criminal Background Standards Than First Transit's**

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

11.

CASE NO. 10-CV-03158 WHA

**III.    LEGAL ANALYSIS**

      **A.    Plaintiff Lacks Standing To Represent A Class Seeking Injunctive Relief Under Rule 23(b)(2) And Is Not An Adequate Representative Under Rule 23(a)**

           **1.    Plaintiff Has No Credible Threat of Personal Future Injury**

Plaintiff's class claims are premised solely on injunctive and declaratory relief under Federal Rule of Civil Procedure, Rule 23(b)(2) which provides that 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Id. See* Motion at p. 15:1-2. However, Article III limits the federal court's jurisdiction to "cases" and "controversies."

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

12.

CASE NO. 10-CV-03158 WHA

U.S. Const. art. III, § 2.[9]   Therefore, where as here, Plaintiff seeks only injunctive and declaratory relief, she must "demonstrate a credible threat of *future injury* which is sufficiently concrete and particularized to meet the 'case or controversy' requirement of Article III." *Stevens v. Harper*, 213 F.R.D. 358, 366 (E.D. Cal. 2002) (emphasis added) ("The imminent threat showing is a separate jurisdictional requirement, arising independently from Article III, that is grounded in the traditional limitations on the court's power to grant injunctive relief."), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004) (plaintiff must demonstrate a "real and immediate threat of repeated injury"). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) *quoting O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

Plaintiff cannot benefit from the injunctive relief she now requests. ██████████

██████████████████████████████████████████████████████████████

████████████████████████   She is not presently employed by First Transit, and by her own admission is currently working (at a higher hourly wage) for a competitor. *See* App. Ex. B-21 at 117:20-21, 121:3-13; *see* Motion at p. 4:16-18.   Plaintiff does not pray for reinstatement in her Complaint.   Plaintiff cannot show there is any real or immediate threat she personally will suffer any future harm resultant from First Transit's *current* criminal background checking practices, her claim is entirely speculative and she therefore lacks standing to seek injunctive relief.   *See B.C. v. Plumas Unified School Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999) (former student lacked standing to enjoin school because he was no longer enrolled and had no plans to re-enroll).

Because Plaintiff cannot personally establish a likelihood of substantial and

---

[9]   As a threshold jurisdictional issue, First Transit will address Plaintiff's standing to seek relief under Rule 23(b)(2) before demonstrating that she similarly cannot meet the Rule 23(a) commonality, typicality and adequacy requirements.   The district court cases Plaintiff cites for the proposition that this case is "precisely the kind that Rule 23(b)(2) was designed to address," *see* Motion pp. 21:28-22:12 do not control. Each of those classes sought back pay, front pay, and restitution as "equitable relief," as did Plaintiff here until the theory was rejected by *Wal-Mart. See, e.g., Dean v. Intl. Truck & Engine Corp.*, 220 F.R.D. 319, 322 (N.D. Ill. 2004) (class sought equitable relief in the form of back pay, front pay and jobs); *United States v. City of New York*, 258 F.R.D. 47, 66 (E.D.N.Y. 2009) (class claims for injunctive and declaratory relief predominated over requested monetary relief).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION                    13.                    CASE NO. 10-CV-03158 WHA

immediate irreparable injury, she has no standing to seek injunctive relief on behalf of a class.  *See Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1042, 1045 (9th Cir. 1999) (injuries to unnamed members are "simply irrelevant to the question whether the named plaintiffs are entitled to the injunctive relief they seek.")  No other plaintiffs have chosen to join this lawsuit as named plaintiffs. "It is well settled that at least one named plaintiff must satisfy the actual injury component of standing in order to seek relief on behalf of himself or the class." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1002 n.7 (9th Cir. 2006) (internal quotations omitted) (emphasis in original).  Because she lacks standing to bring suit under Rule 23(b)(2), she plainly is an inadequate class representative. *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 468 (9th Cir. 1973) ("A plaintiff who is unable to secure standing for himself is certainly not in a position to 'fairly [e]nsure the adequate representation' of those alleged to be similarly situated.") *citing Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 734 (3rd Cir. 1970).  Plaintiff's request for class certification must therefore be denied.

## 2.    Plaintiff's Declaratory Relief Claim Similarly Is Not Ripe

As the sole named plaintiff, Plaintiff's personal inability to establish a likelihood of future injury also renders premature her personal and class claims for declaratory relief. The "ripeness" doctrine protects against premature adjudication of suits in which declaratory relief is sought. *See Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105-07 (1977).  In suits seeking both declaratory and injunctive relief against a defendant's continuing practices, the ripeness requirement serves the same function in limiting declaratory relief as the imminent-harm requirement serves in limiting injunctive relief.  *See Hodgers-Durgin*, 199 F.3d at 1044 ("translating the language of injunctions and imminency into the language of declaratory judgments and ripeness," . . . "[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'") *citing Texas v. United States*, 523 U.S. 296, 118 S. Ct. 1257, 1259 (1998).  Whether Plaintiff would eventually reapply to First Transit, ███████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████    in any event, are all contingencies too

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108-2693
415.433.1940

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION                    14.                    CASE NO. 10-CV-03158 WHA

1   speculative to warrant any equitable judicial remedy, including declaratory relief, that would require,

2   or provide a basis for requiring, First Transit to change its *current* practices.

3       **B.**    **The Putative Class Members For Whom Plaintiff Seeks Injunctive Relief Are Not Ascertainable**

4             Plaintiff is now precluded from seeking back pay as an "equitable remedy" for the

5   class she seeks to represent. *See Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S. Ct. 2541,

6   2545 (2011). As such, Plaintiff's retrospective class definition is at complete odds with the

7   prospective injunctive relief to which her class claims are limited. Yet, in addition to the explicit

8   requirements of Rule 23, an implied prerequisite to class certification is that the class must be

9   sufficiently definite; the party seeking certification must demonstrate that an identifiable and

10  ascertainable class exists. *See, e.g., Xavier & Franklin v. Philip Morris USA Inc.*, 2011 WL 1464942

11  at *12 (N.D. Cal. Apr. 18, 2011*); Deitz v. Comcast Corp.*, 2007 WL 2015440 at *8 (N.D. Cal. Jul.

12  11, 2007). This Court previously held in denying a motion for class certification,

13

14          Ascertainability is needed for properly enforcing the preclusive effect of final judgment. ***The class definition must be clear in its applicability so that it will be clear later on*** whose rights are merged into the judgment, that is, ***who gets the benefit of any relief and who gets the burden of any loss***. If the definition is not clear in its applicability, then satellite litigation will be invited over who was in the class in the first place. ***Indeed, courts of appeals have found class certification to be inappropriate where ascertaining class membership would require unmanageable individualized inquiry***.

15

16

17

18

19  *Xavier & Franklin,* 2011 WL 1464942 at *12 (emphasis added)*, citing Romberio v. Unumprovident

20  Corp.*, 385 F. App'x 423, 431-33 (6th Cir. 2009); *Newton v. Merrill Lynch, Pierce, Fenner & Smith,*

21  *Inc.*, 259 F.3d 154, 187, 191-93 (3d Cir. 2001). For a proposed class to satisfy the ascertainability

22  requirement, membership must be determinable from objective criteria. *Xavier & Franklin,* 2011

23  WL 1464942 at *13. While Plaintiff purports to represent a class of individuals whose applications

24  were allegedly rejected by First Transit as a result of its criminal background checking practices, she

25  is precluded by her Complaint from seeking any relief for those individuals (assuming they exist).

26  Indeed, the only people who could benefit from the mandatory injunction Plaintiff now seeks are

27  African American conditional drivers who have yet to apply to, or be rejected by, First Transit.

28  Membership in that group is entirely unknown, cannot currently be identified through objective

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
15.
CASE NO. 10-CV-03158 WHA

1  criteria and cannot meet the ascertainability requirement.

2  ███████████████████████████████████████████████████████

3  ███████████████████████████████████████████████████████

4  ███████████████████████████████████████████████████████

5  ███████████████████████████████████████████████████████

6  ███████████████████████████████████████████████████████

7  █████████████████████████████████████████████

8  **C.    Plaintiff Fails To Meet The Minimum Rule 23(a) Typicality, Adequacy Or Commonality Standards**

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *See Wal-Mart,* 131 S. Ct. at 2550, *citing Califano v. Yamaskai,* 442 U.S. 682, 700-01 (1979).   Rule 23(a) ensures that the named plaintiff is an appropriate representative of the class whose claims she purports to litigate. *Id.* The four mandatory requirements of numerosity, commonality, typicality, and adequacy of representation set forth under Rule 23(a), "effectively 'limit the class claims to those fairly encompassed by the named plaintiff's claims.'" *Wal-Mart,* 131 S. Ct. at 2550, *citing General Telephone  Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982).   The party seeking class certification bears the burden of showing that at least one requirement of Rule 23(b) is met *and* that each of the four Rule 23(a) requirements are met. *Wal-Mart,* 131 S. Ct. at 2548, *citing* Fed. Rule Civ. Proc. 23(a) and (b); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).   Because the requirements are conjunctive and Plaintiff has no standing to bring a claim under Rule 23(b)(2), the analysis need go no further.   As demonstrated herein, Plaintiff cannot meet the Rule 23(a) typicality, adequacy or commonality requirements.[10]

**1.    Plaintiff's Claims Are Not Typical of The Class Claims And As Such She Is Not An Adequate Class Representative**

The circumstances under which Plaintiff was terminated, alone preclude her from asserting commonality with the retrospective class she has defined.  Here, Plaintiff was terminated at a time that predecessor background checking procedures were in effect at First Transit.  She cannot

---

[10]   While the evidence refutes Plaintiff's claims that First Transit's criminal background checking procedures disparately impact African American conditional drivers, for purposes of this Opposition, First Transit does not dispute the numerosity element of Rule 23(a).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION                16.                CASE NO. 10-CV-03158 WHA

demonstrate that the practices in effect mandated her termination.  The reason given for Plaintiff's termination was "Unsatisfactory Background Results," *see* Whitt Decl. Ex. 3 at D0000060, and while not stated in her Termination Profile, she testified that her criminal background check revealed a felony conviction she had not disclosed.  App. Ex. B-21 at 199:13-204:2.  She produced paperwork to the safety manager showing the felony welfare charge had been reduced to a misdemeanor and then expunged pursuant to California Penal Code section 1203.4a.  Id. at 213:17-214:11; *see* Whitt Decl. Ex. 4.  Under the procedures in place at the time of Plaintiff's conditional offer, the issue should have been escalated for resolution.  App. Ex. C and Ex. 36 and Whitt Decl. Ex. 20.  Indeed, the 2008 Human Resources Manual plainly contained provisions which required that in the event of "questionable results," a complete copy of the report be sent to the Hiring Manager, Region Human Resources Director and Director of Safety for review. *See* Whitt Decl. Ex. 20 at D001984-85.  CRC reports with discrepancies were to be reviewed, the employees were to be notified and were to be given USIS/HireRight's contact information.  *See* Whitt Ex. 18 at D0036630, 37.  It was also recommended that the security team then in place be allowed to review felony charges.  *See* Whitt Decl. Ex. 20 at D0001986.

Under California's expungement statute, with the exception of circumstances not applicable here, Plaintiff was entitled not to disclose the conviction, and it was not a bar to employment. *See* Cal. Penal Code § 1203.4a.  Plaintiff seeks to represent class of conditional drivers who were terminated "***because*** the class member failed the criminal background checking policy." Motion at p. 1. Nothing in First Transit's criminal background check practice mandated termination of individuals with properly expunged criminal convictions.[11]  Thus, Plaintiff did not suffer the same harm as others who were terminated during the same time period and is not typical of the class. *See Hanon v. Dataproducts Corp.*, 976 F. 2d 497, 508 (9th Cir. 1992) ("The test of typicality 'is whether

---

[11] Under FGA's current contract with HireRight, records of expunged convictions are not returned to First Transit, and thus there would be no criminal "hit" and HireRight would adjudicate her background check as a "pass."  Wehrum Decl. ¶6.  Even if the results were erroneously returned to First Transit, given that Plaintiff's welfare fraud conviction was reduced to a misdemeanor, App. Ex. B-21 at 212:18-213:17, Whitt Ex. 4, under the new CRC Matrix, it is likely she would be an automatic "hire."  It is entirely disingenuous, therefore, for Plaintiff to assert she has standing on the grounds that her expunged felony conviction would be an "absolute disqualifier" under First Transit's policies.   *See* Motion at p. 19:9-12.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

17.

CASE NO. 10-CV-03158 WHA

1   other members have the same or similar injury, whether the action is based on conduct which is not

2   unique to the named plaintiffs, and whether other class members have been injured by the same

3   course of conduct.'"), *citing Schwartz v. Harp*, 108 F.R.D. 279, 283 (C.D. Cal. 1985).

4   **2.    Plaintiff Cannot Show A Common Policy Or Practice Which Has, Or
        Will Have, A Disparate Impact On African American Conditional
5        Drivers**

6   As in *Wal-Mart*, the crux of this case is commonality.  The Court made clear, that to

7   demonstrate commonality, plaintiff must show that the class members she seeks to represent "have

8   suffered the same injury." *See Wal-Mart*, 131 S. Ct. at 2551, *citing Falcon*, 457 U.S. at 157.  The

9   Court clarified that in suffering the same injury under Title VII, 42 U.S.C. § 2000e, *et seq.*, the class

10  members' claims must depend upon a common contention which, under Rule 23(a)(1) "must be of

11  such a nature that it is capable of classwide resolution – which means that *determination of its truth*

12  *or falsity will resolve an issue that is central to the validity of each one of the claims in one*

13  *stroke.*"   *Id.* at 2551 (emphasis added).   As the Court made clear, "[w]hat matters to class

14  certification . . is not the raising of common 'questions' – even in droves – but, rather the capacity of

15  a classwide proceeding to generate common answers apt to drive the resolution of the litigation.

16  Dissimilarities within the proposed class are what have the potential to impede the generation of

17  common answers." *Id.*, *citing* Nagareda, *Class Certification in the Age of Aggregate Proof*, 84

18  N.Y.U. L. Rev. 97, 132 (2009).  Plaintiff alleges that First Transit has a single criminal background

19  checking policy that is commonly applied causing disparate impact on a nationwide putative class of

20  African American conditional drivers. The statistical evidence refutes such a contention.

21  **a.    Plaintiff's Expert Failed To Conduct A Rigorous Analysis As
        Required Under Rule 23(a) And Thus His Conclusion That There
22       Is Disparate Impact Caused By A "Common Policy" Is Fatally
        Flawed**

23  ████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████

26  ████   ████████████████   ██████████████   ██████████████

27  ████████████████████████████████████████████████████████

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION                    18.                    CASE NO. 10-CV-03158 WHA



LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

19.

CASE NO. 10-CV-03158 WHA



LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION                    20.                    CASE NO. 10-CV-03158 WHA



OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

CASE NO. 10-CV-03158 WHA

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

████████████████████████████████████████████████████████.

      **b.**     **First Transit's Statistical Analysis, By Contrast, Affirmatively Illustrates The Lack of Commonality and Uniformity Necessary for Class Treatment**

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

CASE NO. 10-CV-03158 WHA

1

2

3

4

5

6

7

8

9

10          **c.**      **Plaintiff's Unreliable Statistical Evidence Cannot Be Used To Meet Her Burden To Show Commonality Under Rule 23(a)**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26        Plaintiff thus fails to meet her burdens of identifying the common employment

27 practice at issue, and showing a causal connection between such an overall practice and the

28 exclusion of conditional drivers from First Transit's workforce because of their race. *Watson v. Fort*

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

23.

CASE NO. 10-CV-03158 WHA

1  *Worth Bank & Trust*, 487 U.S. 977, 994-94 (1988), *superseded by statute on other grounds*, 42

2  U.S.C. § 2000e–2(k).  *See, cf., Coleman v. The Quaker Oats Company*, 232 F.3d 1271, 1282-83 (9th

3  Cir. 2000) (discussing in disparate treatment case, defects in statistical analysis that did not account

4  for all pertinent variables).  Not only is Plaintiff's aggravated and undifferentiated showing defective

5  as a matter of statistics, it highlights the absence of a class that has suffered the same injury, required

6  for certification under *Wal-Mart*, 131 S. Ct. at 2550.[15]  Moreover, Plaintiff makes no statistical

7  showing whatsoever of the impact of the present iteration of First Transit's phased background

8  check practices and hence provides no support for the requested *prospective* injunctive relief.

9       Given the myriad of factors used by First Transit and CBCU personnel in determining

10  whether a criminal "hit" should result in termination (which have changed over the relevant period),

11  Plaintiff has failed entirely in her burden of offering evidence "isolating and identifying the specific

12  employment practices that are allegedly responsible for any observed statistical disparities." *Wards*

13  *Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 655 (1989), *superseded by statute on other grounds*,

14  42 U.S.C. § 2000e–2(k), *quoting Watson*, 487 U.S. at 994.  Even assuming she could overcome her

15  lack of standing, Plaintiff has not met her burden, as she must under Rule 23(a) to demonstrate that

16  there was a nationally applied criminal background checking policy – that with the requested

17  injunctive relief – could remedy the alleged disparity for African American conditional drivers with

18  criminal backgrounds – all in one stroke.  *See Wal-Mart,* 131 S. Ct. at 2550.  There is, indeed, no

19  "glue" which can hold together all the reasons for the employment decisions.  *Id.* at 2552.

### 3.  Plaintiff's Reliance On Professor Western's Irrelevant Report Is Objectionable

21       Plaintiff cannot deny First Transit accomplished all the relief she seeks an injunction,

22  even without a showing of disparate impact on African Americans as a result of its practices.  Still,

---

[15] In addition to the defective analysis provided for the March 15, 2010 to May 2011 period, Plaintiff made no probative showing for the prior period starting January 23, 2009. The extrapolation analysis utilized by DiPrete is flawed by the lack of similarity in background check practices between (or even during) the two periods.  Moreover, the cases cited by Plaintiff, Motion at p. 18 n.22, in support of extrapolation as a technique, *Brown v Nucor Corp.,* 576 F.3d 149, 154 (4th Cir. 2009), *cert. den.*, ___, U.S. ___, 130 S. Ct. 1720 (2010) and *U.S. v. County of Fairfax*, 629 F.2d 932, 937 n.4 (4th Cir. 1980), *cert den.,* 449 U.S. 1078 (1981) both involved situations where defendant had destroyed the earlier data, an issue admittedly not present in this case. App. Ex. B-28 at 120:18-23.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION

24.

CASE NO. 10-CV-03158 WHA

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████        Yet, neither Plaintiff nor her expert demonstrate that any further revision to First Transit's current CRC Matrix would achieve less disparate impact to the 201 people she claims were impacted here.  In fact, a essay written by Plaintiff's sociological expert, Bruce Western, challenges the very premise of her claim. *See* Request for Judicial Notice, Ex. A [Bruce Western, *Criminal Background Checks and Employment Among Workers With Criminal Records*, 7 CRIMINOLOGY & PUB. POL'Y 413, 416 (2008)] ("Limiting background checks, thus, may have only modest effects upon improving employment among individuals with criminal records.  Instead, real social investments that build skills and improve health and well-being more directly redress the greatest obstacles to employment among individuals with criminal records.") The generalized societal information contained in Western's report cannot be extrapolated to First Transit's practices and is therefore, irrelevant and inadmissible. *See* F.R.E. 401 and 402.

## IV.     CONCLUSION

Plaintiff cannot salvage her claims from the strategic decision made long ago to seek class-wide relief solely under a Rule 23(b)(2) theory.  With *Wal-mart* rejecting the notion that back pay constituted equitable relief, Plaintiff's only viable claims are for injunctive and declaratory relief – claims which neither she, nor the class as defined have standing to assert.  Plaintiff is neither an adequate nor typical plaintiff under Rule 23(a).  Even if she was, her statistical expert utterly failed to perform the requisite rigorous analysis necessary to demonstrate that commonly applied criminal background checking practices had any disparate impact on any First Transit employee on account of his or her race.  Plaintiff's Motion for class certification must, therefore, be denied.

Dated: July 21, 2011                                   Respectfully submitted,

                                                       /S/Constance E. Norton
                                                       CONSTANCE E. NORTON
                                                       LITTLER MENDELSON
                                                       A Professional Corporation
                                                       Attorneys for Defendant
                                                       FIRST TRANSIT, INC.

Firmwide:102914921.1 063012.1026

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

OPPOSITION TO PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION                 25.                CASE NO. 10-CV-03158 WHA